UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:                                                                                       CASE NO. 08-17980-BKC-JKO
                                                                                             CHAPTER 7
TRAFFORD DISTRIBUTING CENTER, INC.
a/k/a Trafford Distribution Center, Inc.,

      Debtor.
_____/
SONEET R. KAPILA, Trustee in Bankruptcy
for TRAFFORD DISTRIBUTING CENTER, INC.,

      Plaintiff,

vs.

RICHARD I. CLARK AS TRUSTEE FOR
MATTHEW WORTLEY TRUST d/b/a X CO. FINANCE,
RICHARD I. CLARK AS TRUSTEE FOR                                  Adv. Case No. 08-01759-JKO
MATTHEW WORTLEY TRUST d/b/a
X CO. FACTORING CORP., RICHARD I. CLARK
d/b/a X CO. FACTORING CORP., RICHARD I. CLARK
d/b/a X CO. FINANCE., RICHARD I. CLARK AS
TRUSTEE FOR JOSEPH M. WORTLEY TRUST d/b/a
X CO. FINANCE, RICHARD I. CLARK AS TRUSTEE
FOR JOSEPH M. WORTLEY TRUST d/b/a
X CO. FACTORING CORP., RICHARD I. CLARK d/b/a
MATTHEW WORTLEY TRUST, RICHARD I. CLARK
d/b/a JOSEPH M. WORTLEY TRUST

      Defendants.
_____/
SONEET R. KAPILA, Trustee in Bankruptcy
for TRAFFORD DISTRIBUTING CENTER, INC.,

      Plaintiff,
vs.

LIBERTY PROPERTIES AT TRAFFORD, LLC,                     Adv. Case No.:08-01792-JKO
LIBERTY ASSOCIATES, LC, AND
ADVANCED VEHICLE SYSTEMS, LLC,

      Defendants.
_____/

SONEET R. KAPILA, Trustee in Bankruptcy
for TRAFFORD DISTRIBUTING CENTER, INC.,

       Plaintiff,

vs.

BARBARA WORTLEY,                                      Adv. Case No.: 08-01793-JKO

       Defendant
_____/

## DEFENDANTS' MOTION TO RECUSE AND TO STAY PROCEEDINGS PENDING DISCOVERY ON THE ISSUE OF RECUSAL

Movants, RICHARD I. CLARK AS TRUSTEE FOR THE JOSEPH M. WORTLEY TRUST d/b/a X CO. FACTORING CORP. ("Mr. Clark") and in all other capacities named herein, Liberty Properties at Trafford, LLC ("Liberty Properties"), Liberty Associates, LC ("Liberty Associates"), Advanced Vehicle Systems, LLC ("AVS"), and BARBARA WORTLEY ("Mrs. Wortley") (collectively referred to herein as "Defendants"), by and through undersigned counsel and pursuant to 28 U.S.C. § 455 and the Code of Judicial Conduct for United States Judges, Canons 2 and 3, move that this Court recuse itself from presiding over these proceedings, and vacate all prior Orders in these cases, and stay all other proceedings pending discovery on the issues of recusal. As good grounds therefor, Movants would show that:

       1.        In the Clark case, Adversary Case No. 08-01759-JKO ("the Clark case"), this Court has entered a Summary Judgment, on August 31, 2009 [DE-136], and thereafter a Final Judgment [DE-194] finding that Defendant Attorney violated the Automatic Stay of the Bankruptcy Code and is liable for Attorney's Fees to be paid for the benefit of the Ruden McClosky Law Firm.

       2.        This finding is based upon a "lawyer letter" dated November 12, 2008, in response to a "lawyer letter" from the Ruden McClosky law firm of November 11, 2008. Without raising the

issue to Mr. Clark, the Ruden McClosky lawyer simply amended an Adversary Claim, sought and obtained a preliminary injunction, which was promptly dissolved, and is now seeking $97,749.00 in attorney's fees.  See [DE-140] for the first claim for attorney's fees and [DE-201] for the second claim of attorney's fees.

3.    In the Barbara Wortley case, Adversary Case No. 08-17980-JKO ("the Wortley case"), and the Liberty Properties case, Adversary Case No. 08-01792-JKO ("the Liberty case"), the Court has entered Orders preventing Defendants from utilizing an expert witness and thereafter entered Final Judgments [DE-218, Wortley and DE-231, Liberty], assessing liability against Defendants including liability against Barbara Wortley that is far in excess of the amounts originally sought, based upon extensive, and in the opinion of Defendants and their undersigned counsel - unsupported - , Findings of Fact and Conclusions of Law ("FF&CL") [DE-217, Wortley and DE-228, Liberty], following a January 25-26, 2010 trial.

4.    Defendants have all filed Motions to Alter or Amend the Judgments.

5.    It has just come to the attention of undersigned counsel and Defendants that this Court has a personal relationship with George Steven Fender ("Mr. Fender")[1], an attorney, who joined the Ruden McClosky firm in August of 2009, to work closely with the attorneys for the Trustee herein, in the same relatively small office, in the same practice group.[2]  Presumably Mr. Fender was negotiating his new position, prior to and in August, 2009, while the summary judgment herein was under the Court's advisement.  The Court, during this time frame, appears to have had an intimate relationship with Mr. Fender, has since that time been living with him as domestic

---

[1] See Composite Exhibit "A",  list of donors for Equality Gala, wedding announcement and registry.

[2] See Exhibit "B", printouts from Ruden McClosky website.

partners and the couple are now planning to celebrate their wedding.[3]

6. At the same time, another Ruden McClosky attorney, Michael Bakst ("Mr. Bakst"), has served as counsel for the Plaintiff in this action. Mr. Fender joined the same Bankruptcy practice group at Ruden's West Palm Beach office[4], and works closely with - essentially for - Mr. Bakst and his fiduciary. For example, beginning January, 2010, Mr. Fender has undertaken at least nine (9) representations wherein he is trial counsel for Mr. Bakst as Trustee in Bankruptcy. In addition, he and Mr. Fender have served as co-counsel in the past for the present Trustee, Soneet Kapila. The Bankruptcy practice of the Ruden firm is very small, and focused on the West Palm Beach office, staffed by three (previously four) lawyers, led by Mr. Bakst.

7. In this case, the Ruden McClosky firm had expended a very substantial amount of time, in three related cases, and has not yet received any payment of fees. In the opinion of undersigned counsel, the amount of attorney time expended has been far out of proportion to the amounts alleged to be in controversy, and asserted as of July, 2009.

8. Here the amount of fees to be awarded to Mr. Bakst and Mr. Fender's law firm will be determined by this Court and will be entirely effected by the outcome of this case as to the amount of the recovery, the amount of the fees and the sources to collect any such fees. Mr. Fender has a substantial interest in the outcome of this matter as the very profitability of this small bankruptcy section of the firm as well as the firm's reputation with clients and ability to attract new clients will be impacted by the results of these cases. In fact, at a time when it is public knowledge that the Ruden firm has radically downsized, the results of this case, with fees claimed by Mr. Bakst in

---

[3]See Composite Exhibit "A".

[4]See Exhibit "B".

excess of $500,000, may even effect the continued employment of Mr. Fender.

9. As a direct result of the rulings of this Court, the Ruden McClosky firm stands to profit greatly from the hours that have been incurred in these cases far more than would have been reasonably anticipated based upon the pleadings in these cases and the amounts, placed in controversy by the Plaintiff.

10. The above-stated relationships were never disclosed by Mr. Bakst or the Court to undersigned counsel, nor to any of the Defendants in any of these related cases. In fact, Mr. Bakst filed an affidavit of disinterest in this case on June 18, 2008[5], and has never supplemented that filing.

11. The progress of the relationship the Court has with Mr. Fender, and the connection with Mr. Fender's firm which is prosecuting these actions, and the Bankruptcy practice group and colleague (Mr. Bakst) who stands to benefit, or not, from attorney fee awards by this Court, which are based largely on the results that have been decided by this Court or will be decided by this Court, give rise to appearance of impropriety in violation of 28 U.S.C. § 455 and the Code of Judicial Conduct for United States Judges, Canons 2 and 3. Additionally, in accordance with 28 U.S.C. § 455 and the Code of Judicial Conduct for United States Judges, Canons 2 and 3, this relationship should have been disclosed as it was and is grounds for recusal of this Court.

12. Mr. Fender is a very highly regarded attorney who left a prominent position with fourteen years experience with Litchford & Christopher, P.A. in Orlando, and Mr. Fender is well regarded within the Florida Bar as Chair of the State/Federal Judicial Liaison Committee for the Business Law Section. Therefore, there is a reasonable expectation that he is, or will be, treated as an equity partner. Given Mr. Fender's close professional relationship with Mr. Bakst, within

---

[5] See DE-11 in *In re Trafford Distributing Center, Inc. a/k/a Trafford Distribution Center, Inc.*, Case No. 08-17980-JKO.

Ruden's very small West Palm Beach Bankruptcy Group, there is every appearance that Mr. Fender's professional success with Ruden is tied to Mr. Bakst's and Ruden McClosky's Bankruptcy Group's economic success.

13. It has been represented by Mr. Bakst that fees are in excess of $500,000, while Plaintiff's written demands before suit were $339,000. As the accumulated time on this case is very substantial, and the assets of the Estate are limited, based on the Court's rulings, on attorney's fees for violation of the Automatic Stay [DE-136], additional attorney's fees between the Summary Judgment and the end of trial in the Final Judgment [DE-194], the factual findings contrary to the evidence, the granting of relief that was not sought at oral argument on summary judgment, the Court's demeanor, record statements and rulings by the Court leading up to and at trial of this matter, and the harsh content of Findings of Fact and Conclusions of Law, it appears to undersigned counsel that the Court's rulings were the result of bias and prejudice in violation of 28 USC § 144.

14. Mandatory grounds for recusal appear to exist pursuant to 28 U.S.C. § 455(b)(5)(ii) and (iii). In order for Defendants to pursue these grounds, they need to determine whether the Court and Mr. Fender maintained a household and had an intimate relationship during the proceedings. Separately, discovery must be taken as to whether Mr. Fender had any communications regarding this case or in any way acted as a lawyer on the matter, and the specific terms of Mr. Fender's "of counsel" relationship, as offered and accepted, and in practice. Defendants are entitled to complete this discovery and to supplement this Motion based upon the facts learned. *Cheeves v. Southern Clays, Inc.*, 797 F.Supp.1570 (M.D.Ga. 1992). Defendants are commencing appropriate discovery at this time.

15. Under these circumstances, with the Court's domestic partnership/relationship with Mr. Fender, Mr. Fender's close professional and business relationship with Mr. Bakst, the substantial amount of attorneys' fees that are at issue, and the direct impact this Court's rulings will have on attorneys' fees, the Court's impartiality in the proceedings are reasonably questioned. Additionally, Mr. Fender appears to have an interest in the outcome of these proceedings and may have participated in these cases.

16. Finally, a series of adverse rulings which lay the foundation for enhanced fee awards commenced at the identical time that Mr. Fender was apparently negotiating or making plans to move to South Florida, live with the Court, work for Mr. Bakst, and to become Mr. Bakst's legal counsel. Pursuant to 28 U.S.C. § 455(a),(b), and the Code of Judicial Conduct for United States Judges, Canons 2A and 3C(1), recusal is required under the circumstances.

17. Having discussed the matter with all Defendants, undersigned counsel files the within Motion seeking that this Court permit further discovery regarding recusal and thereafter recuse itself. Given the fact that the prior Orders of this Court will result in economic benefit to the Ruden McClosky law firm, to Mr. Bakst and his close colleague and attorney Mr. Fender who is the Court's fiancé, all prior Orders of this Court from and including at least August, 2009, are properly vacated.

**WHEREFORE**, Defendants move this Court recuse itself and vacate all prior Orders, from and after August, 2009, or, alternatively, stay the proceedings except as to discovery regarding recusal and thereafter permit supplementation of this Motion.

## MEMORANDUM IN SUPPORT

Federal Rule of Bankruptcy Procedure 5004 states "[a] bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which

the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case." The Code of Judicial Conduct for United State Judges, Canons 2 and 3, mirror the requirements of 28 U.S.C. § 455. Public trust in the integrity of the judicial system is paramount, and no appearance of impropriety, particularly in federal courts, is countenanced.

## I.  THE COURT SHALL BE RECUSED IN A PROCEEDING IN WHICH THE JUDGE'S IMPARTIALITY MIGHT BE REASONABLY QUESTIONED

Section 455(a) requires the recusal of a court "in any proceeding in which his impartiality might reasonably be questioned," thus requiring recusal not only where the court has actual bias, but also where it has acted in such a way as to give the appearance of partiality to a reasonable person. *SCA Services, Inc. v. Morgan*, 557 F.2c 110, 113-14 (7th Cir. 1977). The appearance of impartiality is virtually as important as the fact of impartiality. *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1361 (10th Cir. 1977).

### A.  A Court Must Avoid An Appearance Of Impropriety

The commentary regarding Canon 2A states: "An appearance of impropriety occurs when reasonable minds, *with knowledge of all the relevant circumstances* disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired." Code of Conduct for United States Judges, Canon 2A Cmt. (2009) (emphasis added). Section 455(b) "establishes a per se rule" *Summer v. Singletary*, 119 F.2d 917, 920 (11th Cir. 1997), that requires disqualification even absent any actual bias. *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991).

A court always must be mindful of Canon 2A, which directs that a court should act at all times in a manner that "promotes public confidence in the integrity and impartiality of the judiciary," as well as the general command of Canon 3C(1) that a court should be recused in a proceeding in

which the "[court's] impartiality might reasonably be questioned." Committee on Codes of Conduct, Advisory Opinion No. 58 (2009). If a court does not recuse itself, it may only participate in the proceeding if, after [disclosure], the parties and their lawyers have an opportunity to confer outside the presence of the court. Code of Conduct for United States Judges, Canon 3D (2009).

In *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101 (5th Cir. 1980), the court held that "a partner's interest in the outcome of any matter handled by his law firm is substantially greater than that of an associate or an employee." *Id*. at 113. "The outcome of any proceeding handled by a law firm may affect the partners' financial interests as well as certain noneconomic interests, including the reputation and goodwill of the firm." *Id*. Judge Fay, writing for the former Fifth Circuit, noted that the district judge's father had only a one percent interest in the law firm representing one of the parties, that the case was billed at a fixed hourly rate, and the fee the firm received would not actually be affected by the outcome of the case. *Id*. This did not matter, according to Judge Fay, because section 455(b)(5)(iii) requires "disqualification when the lawyer-relative has the potential to be affected by the outcome." *Id.* He noted that the case could have been a contingency fee case, or a favorable result might have justified a higher fee and apart from the financial interest, a win or loss could affect the firm's "reputation, its relation with its clients, and its ability to attract new clients." *Id.*

In this case, there was no disclosure of any information that would put undersigned counsel on notice of an appearance of impropriety. The fact that Mr. Fender has been admitted to the Bar for fourteen years and that he has assumed what appears to be a prominent role in the Ruden McClosky bankruptcy practice suggests that Mr. Fender may well be a partner-to-be who has the expectation of being made a partner in a relatively short period of time. If that is the case, then the

success of the Ruden McClosky bankruptcy practice may have a significant impact on Mr. Fender of the sort discussed by Judge Fay in *Potashnick*, even though Mr. Fender may not, or yet, have a direct ownership or interest in the firm.

The Court in this case was obligated to disclose its relationship to Mr. Fender and the Ruden McClosky law firm in order to carry out its duties under the Code of Judicial Conduct for United States Judges and the Federal Statute. By not disclosing such relationship, undersigned counsel is doubtful to the impartiality in this case due to the appearance of impropriety.

    **B.    Disqualification Is Required When A Domestic Partner Has An Interest That Could Be Substantially Affected By The Proceeding**

If "impartiality might reasonably be questioned" under Canon 3C(1), or the relative is known by the court to have an interest in the law firm that could be substantially affected by the outcome of the proceeding, disqualification is required. Code of Conduct for United States Judges, Canon 3C(1)(d)(ii) Cmt. (2009). Although recusal may not be prescribed for participation by a relative who is an associate or non-equity partner, other circumstances may arise that in combination with the relative's status at the firm could raise a question about impartiality and thereby warrant recusal. Committee on Codes of Conduct, Advisory Opinion No. 58 (2009).

A court shall disqualify itself when a spouse is "acting as a lawyer in the proceeding" or "is known to have an interest that *could be* substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5)(ii) & (iii) (emphasis added). Recusal considerations applicable to a spouse should also be considered with respect to a person other than a spouse with whom the court maintains both a household and an intimate relationship. Code of Conduct for United States Judges, Canon 3C Cmt. (2009).

It appears that Mr. Fender was, and is, in a domestic partnership, living at the Court's residence; however, this information is not being filed, for privacy purposes. However, Mr. Fender and the Court jointly sponsored, as Gold Sponsors, the 2009 Equality Florida Broward Gala which took place on November 15, 2009. See Sponsorship, attached hereto as Exhibit "A". In furtherance of Mr. Fender and the Court's domestic partnership, a Williams-Sonoma Registry List identifies a Wedding event in their respective names for November 20, 2010. See Registry List, attached hereto as Exhibit "A".

There is every reason to believe that the Ruden McClosky firm knew of this relationship since at least August, 2009, when Mr. Fender commenced employment with the Ruden McClosky firm on August 24, 2009, while Summary Judgment was under advisement of this Court, and as proceedings continued in front of this Court. Under the circumstances, disclosure was required. It is reasonably assumed that Mr. Fender is or will be treated as an equity partner. Mr. Fender is a very highly regarded attorney with fourteen years experience and Chair of the State/Federal Judicial Liaison Committee for the Business Law Section of the Florida Bar, and there is reasonable expectation that Mr. Fender is, or will be, treated as an equity partner. See Ruden McClosky Announcements, attached hereto as Exhibit "B". And given Mr. Fender's close professional relationship with Mr. Bakst, as one of four bankruptcy attorneys in the West Palm Beach office, now one of three bankruptcy attorneys since Heather Reis's departure to the Fox Rothschild firm, there is every appearance that Mr. Fender's success is tied to Mr. Bakst's economic success. See Bankruptcy Practice Group, attached hereto as Exhibit "B". Defendants are entitled to take discovery regarding these matters and to supplement this Motion based on that discovery. *Cheeves v. Southern Clays, Inc.*, 797 F.Supp.1570 (M.D.Ga. 1992).

Therefore, in order to carry out its duties under the Code of Judicial Conduct for United States Judges and the Federal Statute, given the relation of the Court with Mr. Fender, the Court should permit further discovery and thereafter recuse itself from these proceedings.

**C.    The Standard By Which The Court's Conduct Is Measured Is A Reasonable Layman Standard**

Recusal is required, by statute, "in any proceeding in which [a court's] impartiality might be reasonably questioned," 28 U.S.C. § 455(a), whether or not there is proof that a court was actually biased. If it would appear to a reasonable person that the court has knowledge of facts that would give it an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the court actually has no interest in the case or because the court is pure in heart and incorruptible. *Liljeberg*, 486 U.S. at 860.

Recusal under section 455(a) is appropriate where "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the [court's] impartiality ... ." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003). As the Fourth Circuit stated in *United States v. DeTemple*, 162 F.3d 279 (4th Cir. 1998), "[t]he hypothetical reasonable observer is not the judge himself or a judicial colleague but a person outside the judicial system. Judges, accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regards asserted conflict to be more innocuous than an outsider would."

Under the facts of our case, a reasonable person would reasonably question the relationship between the Court, Mr. Fender, and the Ruden McClosky firm, and the fact that neither the Court nor opposing counsel, disclosed such information to undersigned counsel. It would appear through the reasons stated above that there is an appearance of partiality and impropriety. Given all of this,

and in particular, the Court's relationship with Mr. Fender and the Ruden McClosky firm, and the nondisclosure of these known relationships, how could a reasonable member of the public not question the Court's impartiality in this proceeding? To suggest that this conduct does not undermine the public's confidence in the judicial process is to deny the obvious.

Therefore in order to carry out its duties under the Code of Judicial Conduct for United States Judges and the Federal Statute, the Court must be recused.

## II.    VACATUR OF A DISQUALIFIED COURT'S ORDERS IS REQUIRED

In *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), the United States Supreme Court addressed circumstances in which a court must vacate the prior orders of a judge subject to recusal pursuant to 28 U.S.C. § 455. The Court fashioned a balancing test that requires consideration of the risk that the rulings pose to the integrity of the judicial system. Specifically, a court must consider the risk of injustice to the parties in the case, the risk of injustice in other cases, and the risk of undermining the public's confidence in the judicial process. *Liljeberg*, 486 U.S. at 864.

### A.    Vacatur Is Required When The Conduct Of The Court And A Lawyer Creates An Appearance Of Impropriety That Undermines Public Confidence In Our Judicial System

A bedrock principal of the law of recusal and vacatur is the idea that public confidence in our judicial system can be put at risk by even an appearance of impropriety. The public believes that courts administer justice because the public has faith in the integrity of the attorneys who represent citizens and the judges who resolve their disputes. Public faith in attorneys and judges is based not on first-hand knowledge of an attorney's or court's private thoughts and feelings, but instead on their public conduct. When a court's public conduct creates an appearance of impropriety, there is real risk that the public will lose faith in the integrity of the courts and that this, in turn, will undermine

faith in our judicial system. To guard against this, the rules of recusal and vacatur were developed.

In the *Liljeberg* opinion, the Court established the clear and fundamental mandate that the integrity of the federal judiciary must be unquestionable in the eyes of the parties, the litigants, and most important, the public. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created. *Liljeberg*, 486 U.S. at 860. The Court required the judge to recuse himself retroactively and ordered that his prior orders be vacated because of the *appearance of impropriety* that his conduct created. The Court found retrial necessary, even though there was no allegation that the judge acted with actual bias in the proceedings before him.

In this case, Recusal without more does not remove the taint from this proceeding, as substantial crucial orders, with great economic consequences were entered during this time. There is only one remedy to cure this taint: the Court's rulings must be vacated to protect the public's faith in the impartiality and integrity of the judicial process. The Court's relationship with Mr. Fender and the nondisclosure of such relationship to undersigned counsel, creates an appearance of impropriety that puts public confidence in the judicial system at risk. Although there may be no actual bias, the appearance of impropriety in this case is significant, and clearly sufficient to require vacatur of all prior rulings.

      **B.**     **Vacatur Of Rulings Best Serves The Interests Of The Parties In This Litigation**

Under the second prong of the *Liljeberg* balancing test, the Court must take into account the interests of the parties of the litigation. Here, vacatur best serves the interests of the parties, as set forth above. It is simply unconscionable for parties to be subject to liability far in excess of the amounts pled, and be characterized harshly in Findings of Fact that are prepared by counsel and adopted by the Court when counsel and the Court are closely linked by an undisclosed connection

of intimate personal and professional relationships.

### C. Vacatur Of Rulings Also Best Serves The Interests Of Parties In Other Litigation

The third prong of the *Liljeberg* balancing test, the impact on the parties in other litigation, also favors vacatur. The Court's ruling establish precedent in multiple areas. Allowing these rulings to stand, now that they have been tainted, creates a risk of injustice in those proceedings and an appearance of impropriety as the precedent might properly be considered in the context of the undisclosed relationships. Therefore, vacatur best serves the interest of parties in other litigation.

### CONCLUSION

To dispel all appearances of impropriety and protect the judicial process, the Court must be recused and prior substantive rulings involving the parties should be vacated. Only recusal and vacatur will restore the public's and the parties' confidence in the impartiality of this judicial proceeding.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

By: **s/ Douglas C. Broeker**
    Douglas C. Broeker, Esquire
    Florida Bar No. 306738


Respectfully submitted,

**s/ Douglas C. Broeker**
Douglas C. Broeker, Esquire
Florida Bar No. 306738
Doug@broekerlaw.com
SWEETAPPLE, BROEKER & VARKAS, P.L.
777 Brickell Avenue, Suite 600
Miami, Florida 33131
Tel.: (305) 374-5623
Fax.: (305) 358-1023

and

**s/ Robert A. Sweetapple**
Robert Sweetapple, Esquire
Florida Bar No. 0296988
rsweetapple@sweetapplelaw.com
SWEETAPPLE, BROEKER & VARKAS, P.L.
199 East Boca Raton Road
Boca Raton, Florida 33432
Tel.: (561) 392-1230
Fax.: (561) 394-6102
Attorneys for Defendants

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF system with the Clerk of the Court which sent e-mail notification of such to: **Marla B Neufeld, Esq., and Michael R. Bakst, Esq.,** 222 Lakeview Ave #800, West Palm Beach, FL 33401, efile1542@ruden.com, efile2565@ruden.com on this **24th** day of August, 2010.

By: **s/ Douglas C. Broeker**
Douglas C. Broeker, Esquire
Florida Bar No. 306738

DCB/jfl
M:\wp51\Active.Client.Files\Trafford BKC\Judge Olson Disqualification Issues\Motions\FINAL Recusal Motion.wpd